FILED IN CLERKS OFFICE

NOV 17 '26 PM4:11 USDC MA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

C.A. No. ____________________

Michael J. Cox JR, **Plaintiff**

v.

City of Boston,

Mark Sullivan (in his individual capacity),

Omar Borges (in his individual capacity),

**Defendants**.

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

This civil rights action arises from the wrongful arrest, four-month incarceration, and baseless felony prosecution of an innocent man, Michael J. Cox Jr. While using an online dating phone app—an adult-only dating platform that requires users to attest to being at least 18 years old—Mr. Cox was catfished[1] or misled by a minor ("R.J."[2]) who actively misrepresented himself as an adult. Throughout their brief online communications, R.J. stated that he was an adult, claimed he lived with roommates, indicated he was available during the late-night hours of 3:00

[1] Catfishing on dating apps is the act of creating a fake or stolen online persona to deceive other users into a relationship, friendship, or interaction.

[2] Plaintiff uses the pseudonym "R.J." in place of the individual's legal name in order to protect his privacy.

a.m., and sent photographs depicting an adult physique. R.J. never disclosed his true age, and Mr. Cox had no reason to believe he was communicating with anyone under 18.

During a recorded forensic interview, R.J. explicitly admitted to Boston Police detectives that he met Mr. Cox on Tinder and told Mr. Cox that he was an adult. Despite possessing this direct exculpatory evidence, Detective Omar Borges and Detective Sergeant Mark Sullivan intentionally or recklessly omitted it from their incident report and criminal complaint application. By presenting a distorted, one-sided narrative to a magistrate—while concealing all evidence negating the required element of knowledge of age—Defendants manufactured probable cause where none existed. Defendants compounded these violations by entering Mr. Cox's home without a warrant, falsely claiming to possess a warrant, attempting to coerce him into providing his phone to police, unlocking his iPad, and subsequently obtaining a search warrant based on stale, 13-month-old allegations and material omissions. Mr. Cox endured nearly four months in custody, 13-months of pretrial probation, and the destruction of his reputation and livelihood, the Suffolk County District Attorney dismissed all charges via *nolle prosequi*, conceding the charges could not be proven beyond a reasonable doubt. Mr. Cox brings this action under 42 U.S.C. § 1983 and Massachusetts law to hold Defendants accountable for the violation of his constitutional rights.

## II. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §

1983. This Court therefore has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

2. Plaintiff also asserts claims arising under the laws of the Commonwealth of Massachusetts, including claims under the Massachusetts Tort Claims Act, M.G.L. c. 258, and Massachusetts common law. This Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same case or controversy as Plaintiff's federal claims and derive from a common nucleus of operative fact.

3. This Court has personal jurisdiction over Defendants because the City of Boston is a Massachusetts municipality and the individual Defendants are Boston Police Officers whose acts and omissions giving rise to this action occurred within the Commonwealth of Massachusetts.

4. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside within this judicial district for purposes of venue and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, including Plaintiff's arrest and the search and seizure challenged in this action.

5. Plaintiff served his demand and presentment letter upon the City of Boston in April 2026, pursuant to MCTA. The requisite 6-month wait period has expired.

## III. THE PARTIES

6. Plaintiff Michael J Cox Jr. ("Mr. Cox") is an individual who resides in Worcester, Massachusetts.

7. The defendant Detective "Omar Borges" is a Boston Police Officer whose residence is at present unknown to the plaintiff.

8. The defendant Sergeant Detective "Mark Sullivan " is a Boston Police Officer whose residence is at present unknown to the plaintiff.

9. The police officers, individual defendants described above, were at all times relevant to Mr. Cox's allegations in this Complaint acting under color of law pursuant to statutes, ordinances, regulations, policies, customs, patterns, practices and procedures of the Commonwealth of Massachusetts and the City of Boston, Massachusetts.

10. At all times the individual defendants were acting under the color of law and within the scope of their employment.

11. City of Boston, Defendant City of Boston ("City") is a municipal corporation organized and existing under the laws of the Commonwealth of Massachusetts. The City operates the Boston Police Department ("BPD") and, at all times relevant to this action, employed Defendants Omar Borges and Mark Sullivan as Boston Police Officers. Borges and Sullivan acted under color of state law and within the course and scope of their employment with the City with respect to the conduct alleged herein.

12. The City is a public employer subject to the Massachusetts Tort Claims Act, M.G.L. c. 258, with respect to those state-law claims for which sovereign immunity has been waived.

## IV. FACTUAL ALLEGATIONS

### A. The Investigation and Recorded Forensic Interview

13. On December 26, 2023, a mother reported to police that her minor son ("R.J.") had run away the previous night. Police recovered R.J. on December 27, 2023.

14. On January 3, 2024, Boston Police Detectives Stephanie Gaines and Omar Borges separately interviewed R.J. and his mother. Both estimated that R.J. had sent nude photographs and videos of himself to approximately 15 to 20 adults via online platforms.

15. On February 1, 2024, the Department of Children and Families filed a M.G.L. c. 119, § 51A report noting that R.J. had reported to Boston Children's Hospital and admitted sending explicit photographs of himself to approximately 20 adults.

16. On February 12, 2024, Detectives Gaines and Borges conducted a recorded second interview with R.J.'s mother, who estimated she had observed approximately 15 online conversations between R.J. and various adults, some involving commercial sex work.

17. On March 11, 2024, Detective Borges obtained a search warrant for R.J.'s Instagram account.

18. On April 1, 2024, Detective Borges received responsive records containing messages between R.J. and Mr. Cox spanning approximately one month, beginning on May 14, 2023.

19. On April 12, 2024, Boston Police officers conducted a digitally recorded audio-and-video forensic interview of R.J.

20. As lead investigators, Detective Borges and Detective Sergeant Sullivan reviewed and knew the contents of R.J. 's April 12, 2024 forensic interview, quoting selectively from it in their investigative report.

21. During the April 12, 2024 forensic interview, R.J. explicitly admitted to investigators that communications with Mr. Cox began on Tinder, an adults-only dating platform.

22. During the April 12, 2024 forensic interview, R.J. explicitly admitted to investigators that he told Mr. Cox he was an adult.

23. During the April 12, 2024 forensic interview, R.J. confirmed that he never revealed his true age to Mr. Cox at any point.

24. During the April 12, 2024 forensic interview, R.J. confirmed that all interactions between himself and Mr. Cox were strictly confined to online communications.

25. As experienced investigators assigned to internet and sex-offense investigations, Detective Borges and Sergeant Sullivan knew or reasonably should have known that Tinder is an adult-only dating platform that explicitly prohibits minors, requires users to attest to being at least 18 years old and enter a corresponding birthdate, and publicly displays each user's stated age on their profile.

26. Despite R.J. 's admission that he met Mr. Cox on Tinder and represented himself as an adult there, Detective Borges and Sergeant Sullivan intentionally or recklessly failed to seek a search warrant or preservation request for R.J.'s Tinder account records.

27. On April 16, 2024, Detective Borges applied for a search warrant for Mr. Cox's Instagram account, receiving responsive data on May 6, 2024.

**B. Material Omissions and Misrepresentations to Obtain the Arrest Warrant**

28. On or about July 8, 2024, Detective Borges submitted an Application for Criminal Complaint against Mr. Cox in the Dorchester Division of the Boston Municipal Court, supported by an incident report authored by Detective Borges and Sergeant Sullivan.

29. Each offense sought against Mr. Cox—dissemination of matter harmful to a minor (M.G.L. c. 272, § 28), possession of child pornography (M.G.L. c. 272, § 29C), and enticement of a child under 16 (M.G.L. c. 265, § 26C)—requires proof of *mens rea* regarding age, specifically that the defendant knew or reasonably should have known the individual was underage.

30. Detective Borges and Sergeant Sullivan openly noted in their investigative report and search warrant application that it *"does not include all the facts discovered during the forensic interview; only those relevant facts are sufficient to establish probable cause."*

31. In accordance with that selective approach, Detective Borges and Sergeant Sullivan intentionally or with reckless disregard for the truth withheld substantial exculpatory evidence from the reviewing magistrate, including R.J.'s recorded forensic interview

admissions that he met Mr. Cox on Tinder, told Mr. Cox he was an adult, and never disclosed his true age.

32. Detective Borges and Sergeant Sullivan also intentionally or recklessly withheld exculpatory messages from the May–June 2023 Instagram conversation in which R.J. stated he lived with "roommates."

33. Detective Borges and Sergeant Sullivan further withheld messages in which R.J. stated he was available to meet anytime after "3:00 a.m.," prompting Mr. Cox to ask, *"What happens at 3am btw?"* and pondered, *"Oh I thought maybe [you] get out of work."*[3]

34. Detective Borges and Sergeant Sullivan also withheld messages showing that Mr. Cox invited Boston-based R.J. to travel to Mr. Cox's residence in Worcester without offering transportation—reflecting Mr. Cox's belief that R.J. was an independent adult with his own transportation—while R.J. never mentioned lacking a driver's license or vehicle.

35. Detective Borges and Sergeant Sullivan knowingly or recklessly omitted descriptions of additional photographs R.J. sent to Mr. Cox depicted a body length photo with a physically fit build up to the neck ( no visible head)—as well as a photograph of R.J. sitting on stairs wearing dark sunglasses at a distance—which directly contradicted Defendants' characterization of a single video as depicting an "underdeveloped chest."

36. Detective Borges and Sergeant Sullivan knowingly or recklessly omitted that R.J. had a serious neuro-divergent condition, autism, which research demonstrates can negatively

[3] Under Massachusetts law, only adults can work past midnight. See M.G.L. Chapter 149, Sections 60 through 69, further suggesting Mr. Cox was communicating with an adult.

impact one's appreciation for social rules, and lack appreciation for the ramification of holding one's self out as an adult.

37. At no point prior to or following Mr. Cox's arrest did Detective Borges or Sergeant Sullivan interview or attempt to interview Mr. Cox.

38. Had Detective Borges and Sergeant Sullivan included the omitted exculpatory statements, messages, and photographs—and excluded their misleading characterization of R.J. 's physical appearance—a neutral magistrate would have had no probable cause to believe Mr. Cox knew or should have known R.J. was a minor, and no criminal complaint or arrest warrant would have been issued.

39. Relying on Defendants' materially incomplete and misleading presentation, a magistrate found probable cause on or about July 8, 2024, and issued a criminal complaint and arrest warrant on July 9, 2024.

**C. The Warrantless Entry, Arrest, and Coerced Device Access**

40. On July 9, 2024, approximately 26 armed law enforcement officers surrounded Mr. Cox's residence in Worcester, Massachusetts, and placed him under arrest in handcuffs.

41. At the time of the arrest, no officer had applied for or obtained a warrant to enter or search Mr. Cox's home or seize his electronic devices.

42. While Mr. Cox was handcuffed, visibly shocked, and surrounded by approximately eight to ten armed officers, Detective Borges and other officers pressured him to re-enter his residence.

43. As officers entered the home, at least one officer shouted, *"Boston Police! We have a warrant!"*

44. Six officers proceeded to search the first floor, second floor, and basement of Mr. Cox's residence multiple times without a warrant and without Mr. Cox's voluntary consent.

45. Believing officers possessed a valid search warrant based on the nature of the criminal charges, announcement, and overwhelming show of force, Mr. Cox understood the officers to have a search warrant. Therefore, he complied when Detective Borges ordered him to produce his cell phone, unlock his iPad, use the iPad's tracking feature to locate his cell phone, and leave the iPad unlocked.

46. Ultimately, the cell phone could not be located before a transport van arrived to take Mr. Cox for booking and arraignment.

**D. The Stale Search Warrant, Property Seizure, and Dismissal of All Charges**

47. At approximately 1:45 p.m. on July 9, 2024—hours after the warrantless entry—Detective Borges applied to the Worcester District Court for a warrant to search Mr. Cox's residence and seize electronic devices.

48. Detective Borges's search warrant affidavit relied on alleged online communications from May and June 2023—more than 13 months earlier—and omitted all exculpatory evidence from R.J.'s forensic interview and Instagram messages demonstrating that Mr. Cox believed R.J. was an adult.

49. The affidavit contained no allegations that Mr. Cox was a collector of child sexual abuse material, had any prior history of similar conduct, subscribed to illicit websites, frequented online spaces for minors, or downloaded unlawful content.

50. Based on Detective Borges's stale and materially misleading affidavit, the Worcester District Court issued the search warrant.

51. Executing the warrant, Detective Borges and other officers seized an Apple iPhone 14, two Samsung phones and chargers, two Apple MacBook computers, two Network Attached Storage (NAS) devices containing multiple hard drives, an external hard drive, a SIM card, and three Ring cameras.

52. The seized hardware has an approximate replacement value of $12,000, and contains irreplaceable intellectual property valued at approximately $100,000—including Mr. Cox's original qualitative research on incarcerated individuals and persons with substance use disorders, a personal biography manuscript, deleted-account email archives, and a lifetime of personal photographs and videos.

53. Forensic examination uncovered no unlawful material on any device seized from Mr. Cox's home. Nevertheless, law enforcement has retained his physical devices and intellectual property for 26 months and refuses to return them.

54. On or about August 21, 2026, the Suffolk County District Attorney filed a *nolle prosequi* dismissing all charges against Mr. Cox, expressly acknowledging that the Commonwealth could not prove the charges beyond a reasonable doubt.

**E. Notice to the City of Boston of Detective Borges's Pattern of Unconstitutional Conduct**

55. Prior to July 2024, the City of Boston had actual and constructive notice that Detective Borges had a documented pattern of conducting unconstitutional searches and submitting deficient warrant affidavits.

56. Specifically, in two separate criminal prosecutions (decided in 2015 and 2021), the Massachusetts Appeals Court held that searches involving Detective Borges violated constitutional protections, and in a third case (decided in 2022), the Massachusetts Appeals Court held that a search warrant affidavit authored by Detective Borges failed to establish probable cause.

57. Despite notice of at least three judicial findings of Fourth Amendment noncompliance, the City of Boston failed to retrain, supervise, discipline, or remove Detective Borges from investigative duties involving warrant applications and searches, making the constitutional violations inflicted upon Mr. Cox a direct and foreseeable consequence.

**F. Damages and Harm**

58. As a direct and proximate result of Defendants' unlawful conduct, Mr. Cox suffered nearly four months of wrongful pretrial incarceration followed by 13 months of restrictive pretrial probation.

59. Mr. Cox further suffered widespread reputational destruction following a Boston Police Department press release—republished across media outlets and cited by an advocacy organization labeling him a "predator"—resulting in his placement on public online

watchlists, loss of his career and professional network, and estrangement from his mother, neighbors, and church community.

60. Mr. Cox also suffered severe psychological and physical trauma—including post-traumatic stress disorder (PTSD), agoraphobia, paranoia, suicidal ideation, irritable bowel syndrome (IBS), heart palpitations, and stress-induced hair loss and premature aging—as well as economic losses exceeding $117,000, comprising $5,000 in criminal defense legal fees, $12,000 in seized electronic hardware, and $100,000 in seized intellectual property.

## V. CAUSES OF ACTION

### COUNT ONE

**Unlawful Arrest and Malicious Prosecution via Judicial Deception Under 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments)**

(Against Defendants Omar Borges and Mark Sullivan in Their Individual Capacities)

61. Plaintiff repeats and realleges Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62. At all times relevant to this action, Defendants Omar Borges ("Borges") and Mark Sullivan ("Sullivan") were employed as law enforcement officers with the Boston Police Department and acted under color of state law within the meaning of 42 U.S.C. § 1983.

63. The Fourth Amendment to the United States Constitution, applicable to state and municipal officials through the Fourteenth Amendment, guarantees the right to be free

from unreasonable seizures, including arrest and criminal prosecution initiated or continued without probable cause.

64. In authoring their investigative report and submitting the July 8, 2024 Application for Criminal Complaint to the Dorchester Division of the Boston Municipal Court, Borges and Sullivan knowingly, intentionally, or with reckless disregard for the truth, made materially false and misleading representations and omitted critical exculpatory facts bearing directly on probable cause.

65. Specifically, Borges and Sullivan intentionally or recklessly concealed from the issuing magistrate: a. R.J. 's recorded April 12, 2024 forensic interview admissions that he met Mr. Cox on Tinder, explicitly told Mr. Cox he was an adult, and never disclosed his true age; b. Messages from the May–June 2023 Instagram conversation in which R.J. stated he lived with "roommates," stated he was available after 3:00 a.m. (which Mr. Cox remarked sounded like getting out of work), and failed to mention lacking transportation when invited from Boston to Worcester; and c. Additional photographs R.J. sent to Mr. Cox depicting a, physically fit build with a well-defined chest—and another depicting him seated on stairs wearing dark sunglasses at a distance—which directly refuted Defendants' misleading characterization of a single video as depicting an "underdeveloped chest."

66. Each offense charged against Mr. Cox required probable cause to believe Mr. Cox knew or reasonably should have known R.J. was underage. Had the omitted exculpatory evidence been included and the misleading characterization excluded, no neutral

magistrate would have found probable cause to issue a criminal complaint or arrest warrant.

67. Borges and Sullivan acted in concert to present a distorted, inculpatory-only narrative to judicial officers, thereby causing Mr. Cox's unlawful arrest on July 9, 2024, his nearly four-month pretrial incarceration, and 13 months of restrictive pretrial probation before all charges were dismissed via *nolle prosequi* on August 21, 2026.

68. At the time of Defendants' conduct, the Fourth Amendment right to be free from arrest and prosecution procured through knowing or reckless material omissions and misrepresentations (*Franks* violations) was clearly established.

69. Borges's and Sullivan's conduct was willful, malicious, and undertaken with reckless or callous indifference to Mr. Cox's federally protected rights, entitling Mr. Cox to compensatory and punitive damages against Borges and Sullivan in their individual capacities.

**COUNT TWO**

**Unlawful Searches and Seizures Under 42 U.S.C. § 1983 (Fourth Amendment)**

(Against Defendant Omar Borges in His Individual Capacity)

70. Plaintiff repeats and realleges Paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71. At all times relevant to this action, Defendant Omar Borges acted under color of state law within the meaning of 42 U.S.C. § 1983.

72. The Fourth Amendment guarantees individuals the right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

73. Borges violated Mr. Cox's Fourth Amendment rights through two distinct unlawful searches and seizures on July 9, 2024:

a. **Warrantless Home Search and Coerced Device Access:**

74. Immediately following Mr. Cox's arrest outside his Worcester residence—before any search warrant had been sought or issued—Borges and accompanying officers pressured Mr. Cox back inside his home, falsely announced *"Boston Police! We have a warrant!"*, searched all three levels of the residence without a warrant or voluntary consent, and coerced Mr. Cox under a show of armed authority into unlocking his iPad and using it to search for his cell phone; and

b. **Invalid Search Warrant Procurement and Execution:**

75. Hours later, at approximately 1:45 p.m., Borges procured a search warrant from the Worcester District Court by submitting an affidavit relying on stale, 13-month-old online communications from May–June 2023 while intentionally or recklessly omitting all exculpatory evidence demonstrating Mr. Cox believed R.J. was an adult.

76. Had Borges's search warrant affidavit been corrected to include the omitted exculpatory evidence from R.J. 's forensic interview and Instagram messages, the affidavit would have lacked probable cause to justify seizing the electronic devices.

77. Executing that invalid warrant, Borges and other officers seized approximately $12,000 in electronic hardware and $100,000 in irreplaceable intellectual property and personal

records, which law enforcement has continued to retain for 26 months despite finding no unlawful material and despite the dismissal of all criminal charges.

78. At the time of these events, the Fourth Amendment rights to be free from warrantless residential searches, coerced consent obtained through false claims of possessing a warrant, and searches executed pursuant to warrants procured through stale information and material *Franks* omissions were clearly established.

79. Borges's conduct was intentional, knowing, malicious, or undertaken with reckless indifference to Mr. Cox's constitutional rights, warranting compensatory and punitive damages against Borges in his individual capacity.

**COUNT THREE**

**Massachusetts Common Law: Malicious Prosecution**

(Against Defendants Omar Borges and Mark Sullivan)

80. Plaintiff repeats and realleges Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81. Under Massachusetts common law, a defendant is liable for malicious prosecution where the defendant initiates or causes the initiation or continuation of criminal proceedings against another with malice and without probable cause, and those proceedings terminate in favor of the accused.

82. Borges and Sullivan initiated, procured, and caused the commencement and continuation of felony criminal proceedings against Mr. Cox by knowingly or recklessly submitting

materially misleading reports and withholding dispositive exculpatory evidence from judicial officers and prosecutors.

83. Defendants' actions were the direct and substantial cause of Mr. Cox's prosecution and went far beyond the neutral transmission of information to an independent prosecuting authority.

84. Criminal proceedings were initiated and maintained without probable cause, as the totality of the evidence known to Borges and Sullivan established that R.J. affirmatively misled Mr. Cox into believing he was an adult.

85. Borges and Sullivan acted with malice and for an improper purpose—not only by pursuing charges despite the known absence of probable cause, but also by injecting Mr. Cox's protected political views into their police report (specifically highlighting that Mr. Cox was a "prison abolitionist" and advocated for the decriminalization of adult sex work) to improperly prejudice the probable cause determination.

86. On August 21, 2026, the criminal proceedings terminated entirely in Mr. Cox's favor when the Suffolk County District Attorney filed a *nolle prosequi* dismissing all charges for lack of proof beyond a reasonable doubt.

87. As a direct and proximate result of Defendants' malicious prosecution, Mr. Cox suffered prolonged loss of liberty, severe emotional distress, humiliation, reputational ruin, legal expenses, and economic loss.

## COUNT FOUR

**Massachusetts Common Law: Intentional Infliction of Emotional Distress**

(Against Defendants Omar Borges and Mark Sullivan)

88. Plaintiff repeats and realleges Paragraphs 1 through 87 of this Complaint as though fully set forth herein.

89. Under Massachusetts common law, a defendant is liable for intentional infliction of emotional distress where: (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the conduct caused the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure (*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45 (1976)).

90. Borges and Sullivan intentionally or recklessly abused their law enforcement authority by concealing exculpatory evidence, manufacturing probable cause for serious felonies against an innocent man, invading his home with coercion, false claims of possessing a warrant, and causing him to be jailed for nearly four months and publicly branded a "predator."

91. Defendants knew or reasonably should have known that subjecting an innocent person to false felony charges of this nature would inflict devastating psychological, social, and reputational trauma.

92. Defendants' deliberate and reckless misuse of police authority was extreme, outrageous, and utterly intolerable in a civilized society.

93. As a direct and proximate result of Defendants' conduct, Mr. Cox suffered severe, enduring emotional distress—manifesting in post-traumatic stress disorder (PTSD), agoraphobia, paranoia, suicidal ideation, irritable bowel syndrome (IBS), heart palpitations, and stress-induced hair loss and premature aging—that no reasonable person could be expected to endure.

## COUNT FIVE

**Massachusetts Tort Claims Act (M.G.L. c. 258):**
**Negligent Training, Supervision, and Retention**

(Against Defendant City of Boston)

94. Plaintiff repeats and realleges Paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95. At all relevant times, Defendant City of Boston ("City"), acting through the Boston Police Department ("BPD"), employed Detective Omar Borges and owed a duty of reasonable care to the public in training, supervising, evaluating, disciplining, and retaining officers entrusted with arrest, search, and warrant-application authority.

96. Prior to July 2024, the City had actual and constructive notice of Borges's repeated failure to comply with constitutional search-and-seizure standards, including three separate Massachusetts Appeals Court decisions (in 2015, 2021, and 2022) holding that

searches involving Borges were unconstitutional or that a search warrant affidavit authored by Borges lacked probable cause.

97. Notwithstanding actual and constructive notice of these judicial findings, the City negligently breached its duty of care and failed to enforce mandatory departmental rules governing truthful warrant affidavits and constitutional compliance by: a. Failing to meaningfully investigate or review Borges's prior Fourth Amendment violations; b. Failing to provide remedial training regarding probable cause, *Franks* disclosure obligations, and warrant staleness; c. Failing to supervise or audit Borges's criminal complaint and search warrant applications prior to judicial submission; d. Failing to impose appropriate discipline for documented constitutional noncompliance; and e. Retaining Borges in an investigative assignment with unrestricted authority to seek warrants and execute searches.

98. Given Borges's documented history, it was reasonably foreseeable that the City's failure to supervise, retrain, discipline, or reassign him would result in further unconstitutional searches, seizures, and wrongful arrests of members of the public, including Mr. Cox.

99. The City's negligent supervision, training, and retention—arising from the independent administrative and supervisory omissions of City employees acting within the scope of their employment—was a direct and proximate cause of Mr. Cox's unlawful arrest, search, property deprivation, and resulting injuries.

100. Mr. Cox timely satisfied all statutory presentment requirements under M.G.L. c. 258, § 4 prior to commencing this action pursuant to M.G.L. c. 258, § 2.

**COUNT SIX**

**Massachusetts Tort Claims Act (M.G.L. c. 258): Negligent Infliction of Emotional Distress**

(Against Defendant City of Boston)

101. Plaintiff repeats and realleges Paragraphs 1 through 100 of this Complaint as though fully set forth herein.

102. Defendant City of Boston owed Mr. Cox a duty to exercise reasonable care in supervising, training, and monitoring its investigative personnel, and in enforcing departmental rules requiring accuracy and completeness in warrant applications, so as to protect members of the public from foreseeable harm resulting from unlawful arrests and searches.

103. The City breached that duty by negligently failing to supervise, retrain, or restrict Borges despite actual and constructive notice of his repeated Fourth Amendment violations.

104. As a direct and proximate result of the City's negligence, Mr. Cox was subjected to a wrongful arrest, four-month incarceration, warrantless home invasion, and baseless felony prosecution, causing him severe emotional distress.

105. Mr. Cox's emotional distress has been corroborated by objective physical symptomatology—including irritable bowel syndrome (IBS), severe heart palpitations, hair loss, and sudden premature aging—and a reasonable person under the circumstances would have suffered severe emotional distress. He is also engaged in therapy as a result.

106. Having satisfied the presentment requirements of M.G.L. c. 258, § 4, Mr. Cox is entitled to recover damages against the City pursuant to M.G.L. c. 258, § 2.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael J. Cox Jr. respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

a. Enter a declaratory judgment that Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Massachusetts law;

b. Award compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

c. Award punitive damages against Defendants Omar Borges and Mark Sullivan in their individual capacities;

d. Order the immediate return of all physical devices, storage media, and digital/intellectual property seized from Plaintiff on July 9, 2024;

e. Award reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988 and applicable law; and

f. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

**VERIFICATION**

I, Michael J. Cox Jr., declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am the Plaintiff in this action, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief. Executed on: November 17, 2026.

Respectfully submitted under oath,

**DATED:** November 17, 2026

**Michael J. Cox Jr.**
*Pro Se Plaintiff*
11 South Edlin Street
Worcester, MA 01603
508.340.9113
paralegalmichaelcox@gmail.com